UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

PAUL B. SWIM,                          )
                                       )  No. CV-06-263-MWL
              Plaintiff,               )
                                       )  ORDER GRANTING DEFENDANT'S
v.                                     )  MOTION FOR SUMMARY JUDGMENT
                                       )
MICHAEL J. ASTRUE[1],                  )
Commissioner of Social                 )
Security,                              )
                                       )
              Defendant.               )
                                       )

    BEFORE THE COURT are cross-Motions for Summary Judgment,

noted for hearing without oral argument on April 9, 2007. (Ct.

Rec. 12, 17).  Plaintiff Paul Swim ("Plaintiff") filed a reply on

March 12, 2007.  (Ct. Rec. 19).  Attorney Norman R. McNulty, Jr.,

represents Plaintiff; Special Assistant United States Attorney

Jeffrey H. Baird represents the Commissioner of Social Security

("Commissioner").  The parties have consented to proceed before a

magistrate judge. (Ct. Rec. 6).  After reviewing the

---

[1]

    As of February 12, 2007, Michael J. Astrue succeeded Acting
Commissioner Linda S. McMahon as Commissioner of Social Security.
Pursuant to Fed. R. Civ. P. 25 (d)(1), Commissioner Michael J. Astrue
should be substituted as Defendant, and this lawsuit proceeds without
further action by the parties. 42 U.S.C. § 405 (g).

administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 17) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 12).

### JURISDICTION

On April 8, 2003, Plaintiff applied for disability insurance benefits ("DIB), alleging disability beginning March 1, 2003, due to vision problems in his left eye, hearing problems and back pain. (Administrative Record ("AR") 71-73, 82). The applications were denied initially and on reconsideration.

On August 11, 2005, Plaintiff appeared before ALJ Paul Gaughen, at which time testimony was taken from plaintiff, treating psychologist Donna Rosen, Ph.D., and vocational expert Deborah LaPoint. (AR 428-465). At a supplemental hearing on November 9, 2005, medical expert Ronald Klein, Ph.D., and vocational expert Tom Moreland testified. (AR 381-427). The ALJ issued a decision finding that plaintiff was not disabled on April 26, 2006. (AR 17-26). The Appeals Council accepted additional evidence but denied the request for review. (AR 6-12). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). (Ct. Rec. 4).

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both plaintiff and the Commissioner and will only be summarized here. Plaintiff was 50 years old on the date of onset. (AR 25). He completed the eleventh grade and did not earn a GED. (AR 88, 452). Plaintiff

never learned to read. (AR 452).

At the first administrative hearing held on August 11, 2005, plaintiff testified that he had worked as a logging truck driver for ten years, until late February of 2003. (AR 436, 438).  He stopped working because he went blind in one eye in the fall of 2002 and experienced back problems and pain. (AR 438).  After he stopped working plaintiff cut a little firewood to help people out.  (AR 440).  He testified that when he wore hearing aids his "head would plug up so bad I couldn't breathe" and his "ears would virtually shut down where I couldn't hear."  (AR 454).  At age nine or ten, plaintiff fell out of a tree.  (AR 454).  He testified that when he was 18, x-rays were taken of his back and he was told his back was broken in three places.  (AR 454). Plaintiff worked for years performing hard physical labor despite daily back pain.  (AR 455).  He can walk for one block, and sitting and lifting are painful.  (AR 455-456).  Plaintiff's pain occurs pretty much every day and lasts from the time he gets up in the morning until he goes to bed (AR 456); the pain affects him from his neck to his tail bone.  (AR 460).  Plaintiff testified that he took no prescription medication because he is a recovering alcoholic, does not like the feeling of being drugged, and he cannot really afford it.  (AR 456-457).  He does odd jobs for neighbors and has cut and sold firewood.  (AR 458).  He is a member of the Eagles, goes to listen to live bands, and sometimes dances.  (AR 461).  Plaintiff described his sleep as "most of the time I think I do pretty fair."  (AR 462-463).  He does not have problems with nightmares or flashbacks.  (AR 462).

At the second administrative hearing held on November 9,

2005, plaintiff testified that he experiences pain from his neck down into his legs daily.  (AR 407).  With respect to his childhood back injury, plaintiff elaborated that when he was 18, he had x-rays taken and was told he had three broken vertebras; in his late teens he went to a chiropractor and this eventually relieved his pain.  (AR 407-408).  Plaintiff testified that he continued with successful chiropractic treatments for about ten years but he experienced daily pain for about the last 20 years. (AR 408).  At night plaintiff has trouble closing his right hand and making a fist, and walking is painful.  (AR 408).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.

20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work he has performed in the past.  If plaintiff is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, plaintiff's residual functional capacity ("RFC") assessment is considered.  If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v);

*Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## **ALJ'S FINDINGS**

At the outset the ALJ found that plaintiff meets all of the threshold requirements for Disability Insurance Benefits. (AR 17, 19).

The ALJ found at step one that plaintiff has not engaged in substantial gainful activity since the alleged onset date, March 1, 2003. (AR 19).  At step two, the ALJ determined that Plaintiff suffers from the severe impairments of spondylosis, vision loss, and hearing loss. (AR 19-20).  The ALJ found that plaintiff does not have a severe mental impairment.  (AR 20).  At step three the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in or medically equal to one of the listed impairments. (AR 22).

The ALJ concluded that plaintiff has the RFC to perform a wide range of light work.  (AR 22).  At step four of the sequential evaluation process, the ALJ found that plaintiff is unable to perform his past relevant work. (AR 24-25).  At step five the ALJ relied on the vocational expert's testimony and determined that because there are unskilled jobs plaintiff can perform that exist in significant numbers both regionally and nationally, plaintiff was not disabled within the meaning of the Social Security Act.  (AR 25-26).  Because he found plaintiff was not disabled, the ALJ was not required to perform Drug and Alcohol Abuse ("DAA") analysis.

## ISSUES

Plaintiff contends that the ALJ erred as a matter of law. Specifically, he argues that:

1. The ALJ erred when he found that plaintiff does not suffer from a severe mental impairment.

2.   The ALJ erred by finding plaintiff less than completely credible; and

3.   The ALJ erred by failing to include chronic pain in the

hypothetical question that he asked the vocational expert.
(Ct. Rec. 13 at 7).

This court must uphold the ALJ's determination that plaintiff is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**A. Non-Severe Mental Impairment**

Plaintiff contends that the ALJ erred at step two by finding that he did not suffer from a severe mental impairment, and cites *Webb v. Barnhart*[2] in support.  (Ct. Rec. 13, pp. 7-12).  The Commissioner responds that the ALJ properly weighed the medical evidence provided by Thomas McKnight, Ph.D., and Ronald Klein, Ph.D., and gave specific and legitimate reasons for rejecting the contradicted opinion of treating psychologist Donna Rosen, Ph.D. (Ct. Rec. 18, pp. 5-8).

An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb. Barnhart*, 433 F. 3d 683, 686-687 (9th Cir. 2005)(citing *Smolen v. Chater*, 80 F. 3d 1273, 1290 (9th Cir. 1996); *see Yuckert v. Bowen*, 841 F. 2d 303, 306 (9th Cir. 1988). If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.  S.S.R. No. 85-28 (1985).  Step two, then, is "a de minimus screening device

[2]433 F. 3d 683, 686-687 (9th Cir. 2005).

[used] to dispose of groundless claims," *Smolen*, 80 F. 3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28. The question on review is whether the ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. *Webb*, 433 F. 3d at 687; *see also Yuckert*, 841 F. 2d at 306.

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947 F. 2d 341, 345 (9th Cir. 1991).

A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F. 3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of*

*Health and Human Serv.*, 44 F. 3d 1453, 1463 (9th Cir. 1995).

Plaintiff was criminally charged for events which took place on March 15, 2002, and as a result the court referred him for anger management counseling.[3] (AR 131, 175). Plaintiff began seeing Donna Rosen, Ph.D., on July 11, 2002, about eight months prior to onset. (AR 129-137). Dr. Rosen assessed a GAF of 60[4]. (AR 130). On November 21, 2002, Dr. Rosen wrote a letter to William Doyle, M.D., advising "my opinion is that he should apply for disability" and that plaintiff's eye trouble should "be adequate to justify not driving a logging truck." (AR 175). Dr. Rosen opined that plaintiff had moderate to severe clinical depression, significant suicidal ideation, and increasing anxiety; she observed, "Whether there is a feasible alternative profession for him is problematic." (AR 175). On December 3, 2002, Dr. Rosen noted that Dr. Doyle prescribed paxil. (AR 177). She assessed a GAF of 60. (AR 177).

On November 26, 2002, Dr. Doyle noted that plaintiff was evaluated by Dr. Rosen. (AR 234). He assessed a retinal vein branch occlusion, decreased hearing, and noted plaintiff has been having a problem with depression. (AR 234). Dr. Doyle noted plaintiff had not been on any antidepressant, recommended paxil, and gave him samples. (AR 234). On February 5, 2003, a month

---

[3]

Plaintiff was charged with domestic violence fourth degree assault which was later reduced to disorderly conduct. He described grabbing, slapping and hitting his girlfriend. (Tr. 131, 134).

[4]

A Global Assessment of Functioning Scale (GAF) of 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Ed., (DSM-IV), at 32.

before onset, Dr. Doyle noted that plaintiff "has been doing fairly well." (AR 235). Plaintiff told Dr. Doyle that he feels that he does better on the antidepressants. (AR 235). Dr. Doyle noted "right back pain with significant severe spondylolysis and degenerative disease, decreased left eye vision, and a marked decrease in hearing. (AR 235).

The ALJ points out that in a June 22, 2005, letter, Dr. Rosen reported that Plaintiff needed medication but could not afford to buy it and was too depressed to complete the paperwork to apply for medication through reduced fee programs. (AR 20, relying on AR 354-355). In July of 2005, Dr. Rosen administered the MMPI-2. (AR 356-368). The ALJ notes that the Restricted Clinical Scales indicated that plaintiff was discouraged, cynical, preoccupied with bodily concerns, likely to experience physical health problems as a result of psychological or interpersonal difficulties, at increased risk for depression and likely to be aggressive and argumentative. (AR 20, 356-358). The ALJ notes Dr. Rosen's opinion that plaintiff was "extremely dysfunctional" and that his psychological prognosis was poor. (AR 20, citing Exhibit F at AR 356).

The ALJ observes that at the hearing on August 11, 2005, Dr. Rosen diagnosed plaintiff with a depressive disorder, a pain disorder, and post-traumatic stress disorder. (AR 20, referring to AR 443). The ALJ notes:

> She [Dr. Rosen] indicated that the claimant was withdrawn. She testified that the claimant could not 'deal with the world at large' and that he exhibited anti-social behavior. Dr. Rosen also testified that the claimant's mood was depressed and that he had suicidal ideation and interrupted sleep. She reported that the claimant had experienced severe abuse as a child. She indicated that the claimant's activities of daily living had been compromised by

anger and suspicion and that he had had a progressive deterioration in his condition since 2003.

(AR 20-21, referring to AR 442-446, 449).

Thomas McKnight, Ph.D., examined plaintiff on June 12, 2003, three months after the alleged onset date. (AR 199-203). Plaintiff described blindness in his left eye, a hearing problem, and described his back as "all messed up." (AR 199). Plaintiff's hearing aid was uncomfortable, decreased his hearing, and caused breathing difficulties. (AR 199). He took a daily aspirin and nutritional supplements but no prescription medication. (AR 199). No medical records were attached for Dr. McKnight's review. (AR 199). Plaintiff was seeing a counselor every two weeks for help in dealing with "feelings getting through this disability"; his counselor [Dr. Rosen] never assigned homework or reading material. (AR 199). Plaintiff told Dr. McKnight that many years ago (when his marriage was ending), he had some suicidal ideation, but currently had no plan to harm himself. (AR 199). Dr. McKnight noted that plaintiff had been sober for 27 years, last worked driving a logging truck in February of 2003, and was on probation for disorderly conduct after slapping his girlfriend. (AR 200-201). Plaintiff gets up at 6:30 a.m., waters his yard and drives to town for coffee and breakfast. (AR 201). He lives alone, shops, cooks, does laundry, washes dishes and cleans. (AR 2001). Plaintiff listens to his son play in a rock band, attends community events, and on weekends goes to karaoke bars to listen to music and dance a little. (AR 201). Dr. McKnight noted that plaintiff goes to bed at eleven, has no trouble falling asleep and sleeps through the night. (AR 201). Dr. McKnight's testing showed plaintiff was fully oriented; he scored 27/30 on the Mini-

Mental Status Exam; memory was generally intact, and plaintiff's mental status exam was within normal limits.  (AR 201-202). Dr. McKnight observed that plaintiff demonstrated functional hearing and his vision did not cause problems during their contact.  (AR 202).  Dr. McKnight opined:

"There are no cognitive or psychological factors that preclude Mr. Swim from continuing any work he has enjoyed in the past.  Any difficulty he may have is apparently secondary to physical problems.  He is cognitively capable of retraining and working in different jobs involving at least three steps, repetitive tasks."

(AR 203).

Dr. McKnight diagnosed adjustment disorder with mild depression and assessed a GAF of 70 (excluding medical problems)[5]. (AR 203).

The ALJ rejected Dr. Rosen's opinion as to the nature and severity of plaintiff's mental disorders in part because it was inconsistent with the opinion of examining physician Dr. McKnight. (AR 21).  The ALJ points out that Dr. McKnight opined that plaintiff has no cognitive or psychological factors precluding any of his past employment.  (AR 21, referring to AR 203).  The ALJ observes that Dr. Rosen attempted to refute Dr. McKnight's opinion as outdated (written more than 2 years before the hearing) because plaintiff's condition progressively worsened since the onset date. (AR 21, referring to AR 448-449).

---

[5] A GAF of 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational or school functioning (e.g., occasional truancy, or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships. (DSM-IV), at 32.

The ALJ observes that Dr. Rosen's progress notes do not reflect a worsening condition. (AR 21). The progress notes reflect only that the plaintiff had symptoms of suicidal ideation and sleep disturbance, and that his mental status was normal except for some disorganization. (AR 21, citing Exhibits 2F, 7F, and 11F). The ALJ opines that Dr. Rosen's progress notes do not suggest a progressive worsening of the plaintiff's symptoms after the alleged onset date, based on several factors: (1) Dr. Rosen's notes do not indicate a need for antidepressant medication, and she prescribed none; (2) The progress notes indicate that, since the onset date, Plaintiff has been able to maintain relationships with several women; and (3) Dr. Rosen's notes make little mention of alleged memory problems. (AR 21). Perhaps most significantly, the ALJ points out Dr. Rosen's testimony that plaintiff's GAF has been 45-50[6] since the onset date of March 1, 2003. (AR 21, 449-450). This is not reflected in her progress notes where Dr. Rosen repeatedly assessed a GAF of 60 (or higher)[7]. (AR 21, citing Exhibits 2F, 7F and 11F). The ALJ is correct that Dr. Rosen's letters and testimony indicate the presence of profound depression, PTSD, and a pain disorder; her progress notes do not. (AR 21).

_____

[6]

A Global Assessment of Functioning Scale (GAF) of 45 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). (DSM-IV), at 32.

[7]

As noted, a GAF of 60 indicates moderate symptoms or moderate difficulty functioning, whereas 61 to 70 indicates generally mild symptoms and functioning pretty well. Dr. Rosen assessed GAFs of 61, 63, 62, and 60 from July of 2002 through December 2002. She assessed a GAF of 61 two months before onset, on January 7, 2003. (AR 130, 138, 143, 149, 153, 156, 161, 168, 171, 177, 181, 185, 192, 237).

The ALJ also relied on the November 9, 2005, testimony of medical expert Ronald Klein, Ph.D., when he weighed Dr. Rosen's opinion. (AR 21).  Dr. Klein pointed out that plaintiff's activity level and his ability to maintain friendships did not support Dr. Rosen's assessment.  (AR 21, relying on AR 388-390, 403).  Dr. Klein diagnosed an adjustment disorder with some mild depression. (AR 390).

The ALJ observed Dr. McKnight's opinion that there is no evidence supporting Dr. Rosen's diagnoses of PTSD or a pain disorder.  (AR 22).  The ALJ considered plaintiff's ability to maintain social contacts, to go to karaoke bars, to listen to his son's band, to work on cars, to cut firewood, and to take care of all of his personal needs, when he assessed Dr. Rosen's opinion as to the severity of plaintiff's impairment.  The ALJ pointed out that plaintiff never complained of severe depression to any treating or examining physician.  (AR 23).  The ALJ's reasons for rejecting the contradicted opinion of plaintiff's treating psychologist are specific, legitimate, and supported by substantial evidence.  The ALJ did not err by finding at step two that plaintiff does not suffer from a severe mental impairment.

**B. Credibility Determination**

Plaintiff contends that the ALJ erred by finding him less than fully credible.  (Ct. Rec. 13, p. 13-15).  The Commissioner responds that the ALJ appropriately relied on objective findings and on plaintiff's daily activities when he assessed credibility. (Ct. Rec. 18, p. 9-10).  It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be

supported by specific cogent reasons.  *Rashad v. Sullivan*, 903
F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces
medical evidence of an underlying impairment, the ALJ may not
discredit testimony as to the severity of an impairment because it
is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d
715, 722 (9th Cir. 1998) (citation omitted).  Absent affirmative
evidence of malingering, the ALJ's reasons for rejecting the
claimant's testimony must be "clear and convincing."  *Lester v.
Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are
insufficient: rather the ALJ must identify what testimony is not
credible and what evidence undermines the claimant's complaints."
*Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th
Cir. 1993).

The ALJ found that plaintiff did not report the existence of
severe, debilitating back pain to any treating or examining
physician.  (AR 23).  Less than six months before the alleged
onset date, plaintiff reported a history of multiple back injuries
but denied any current pain or restrictions.  (AR 23, citing
Exhibit 6F/2 at AR 236).  The ALJ points out that it was not until
the hearing that plaintiff described severe impairment.  (AR 23).

The ALJ noted that plaintiff's treatment history is
inconsistent with disability and gave specific references to the
evidence in the record in that regard.  (AR 23).  The ALJ also
noted that plaintiff's allegations of debilitating musculoskeletal
pain are inconsistent with the results of physical examinations
and diagnostic studies: nearly two years after onset, in February
of 2005, plaintiff's spondylosis was mild.  (AR 23, citing
Exhibits 11F/10 and 17F).  Hip x-rays at that time showed some

enthesophyte formation along the greater trochanter and iliac crest, but there was no evidence of fracture, dislocation or significant degenerative changes. (AR 23, citing Exhibit 11F/11).

It was also noted by the ALJ that plaintiff's complaints of disabling vision and hearing loss and an inability to use hearing aids are inconsistent with the results of physical examinations and observations by medical professionals. (AR 23). The evidence relied on by the ALJ included the examination by osteopath Fred Price, D.O., four months after the alleged onset date. (AR 222-229). Dr. Price observed that plaintiff drove a standard transmission vehicle about 90 miles to the exam, and complained of hearing and vision problems as well as chronic back pain. (AR 222). Dr. Price reviewed medical records dated 7/11/02 (DOT exam noting hearing loss, but otherwise considered healthy); 10/14 and 10/18/02 (left eye injury); 2/5/03 (notes, mostly by Dr. Doyle); and 4/30/03 (request for disability and ROM exam). Plaintiff told Dr. Price that he experienced back problems beginning when he fell out of a tree as a teen, saw a chiropractor on several occasions, and eventually returned to normal functioning. (AR 223). The pain was worse from 1980 to 1995 although plaintiff's only treatment was occasionally taking tylenol 3 given to him by his brother or friends. (AR 223). Plaintiff told Dr. Price that he had no insurance or ability to buy prescriptions, and was not receiving back therapy or vision treatment. (AR 223-224). Dr. Price observed that plaintiff appeared to have no difficulty hearing even when Dr. Price's back was turned and he (Dr. Price) was six feet away. (AR 224). Plaintiff lived with his dog in a cabin heated by wood; he likes to fish, swim, and work on

vehicles.  (AR 224).  He took no medication but described a
history of some depression, treated intermittently with paxil. (AR
224-225).  Dr. Price observed that plaintiff had no problems
getting on and off of the exam table (AR 225) and generally
appeared fit and strong. (AR 227).

Dr. Price noted no obvious difficulty with atrophy, spasm, or
acute discomfort on examination; upper and lower body strength
were good, and grip strength was 5/5.  (AR 227-228).  Dr. Price
assessed loss of visual acuity in the left eye and a history of
auditory acuity deficit, indicated that he did not have these
records to review, and noted that plaintiff had no difficulty
understanding him during the exam using conversational tones.  (AR
228).  Dr. Price observed that plaintiff was intermittently
thought to be depressed but was not currently being treated for
depression.  (AR 228).  He opined that plaintiff's back pain was
caused by degenerative changes in the lumbar and thoracic spine
consistent with age and labor history, and assessed plaintiff as
able to work at the medium level with only slight limitations.
(AR 228-229).

The ALJ found that plaintiff's credibility was undermined
because his activities of daily living are inconsistent with
disabling physical or mental impairments. (AR 23-24).  Plaintiff's
activities include shopping, cooking, doing laundry, washing
dishes and housecleaning, as well as dancing, cutting firewood,
fishing, repairing cars, listening to his son's band, and
maintaining social contacts.  (AR 24).  The ALJ contrasted this
with Plaintiff's testimony that he experienced pain from his neck
to his feet daily, and did not feel like making an effort to go on
living because of his pain.  (AR 22-23).  The record supports the

ALJ's finding that plaintiff's activities are inconsistent with the level of claimed impairment.

The ALJ relied on plaintiff's treatment history, the results of physical examinations, diagnostic studies and observations of medical professionals, as well as daily activities when he assessed plaintiff's credibility.  All are specific and legitimate reasons supported by substantial evidence.

**C. Hypothetical to VE - Chronic Pain**

Plaintiff contends that the ALJ failed to include his chronic pain in the hypothetical presented to the vocational expert.  (Ct. Rec. 13, pp. 14-15).  The Commissioner responds that the ALJ properly discredited plaintiff's complaints of chronic pain as part of his credibility determination.  (Ct. Rec. 18, pp. 9-10).

The ALJ found that plaintiff suffers from hearing and vision problems and chronic back pain, but found plaintiff's claims as to the severity of his pain were not supported by the evidence, including plaintiff's less than complete credibility.  As indicated, the ALJ's credibility determination was fully supported by the record.  The ALJ properly included only the impairments established by the evidence in his hypothetical.  This was proper.

The undersigned finds that the evidence of record supports the ALJ's decision.

<u>**CONCLUSION**</u>

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that plaintiff is capable of performing a wide range of work at the light level of exertion is supported by substantial evidence and free of legal error. Plaintiff is thus not disabled within the meaning of the Social

Security Act.  Accordingly,

     **IT IS ORDERED**:

       1.   Plaintiff's Motion for Summary Judgment (Ct. Rec. 12) is **DENIED.**

       2.   Defendant's Motion for Summary Judgment (Ct. Rec. 17) is **GRANTED.**

       3.   The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file**.**

     **DATED** this 12th day of April, 2007.

                                 s/Michael W. Leavitt
                                   MICHAEL W. LEAVITT
                        UNITED STATES MAGISTRATE JUDGE